2014 MAY -2 PM 4: 29
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2014 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 14 **CR14-0257** |
| Plaintiff, | **I N D I C T M E N T** |
| v. | [18 U.S.C. § 1343: Wire Fraud; |
| WILLIAM DONNELLY YOTTY, | 18 U.S.C. § 1341: Mail Fraud; |
| Defendant. | 18 U.S.C. § 2(a): Aiding and Abetting] |

The Grand Jury charges:

COUNTS ONE THROUGH THREE

[18 U.S.C. §§ 1343, 2(a)]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.    Fortuno, Inc. ("Fortuno"); Global Capital Associates, Inc. ("GCA"); Infostar Systems, Inc. ("Infostar"); Pacific Financial Solutions, Inc. ("PFS"); and The Money People, Inc. ("TMP") (hereinafter, collectively the "Yotty entities") were Nevada corporations that each maintained a place of business in Lodi, California.

///

RAK:rak

1    2.    Defendant WILLIAM DONNELLY YOTTY ("defendant YOTTY")

2  exercised control over the Yotty entities.  Defendant YOTTY was named

3  as the sole director on the incorporation documents for Fortuno, GCA,

4  and Infostar; served as the Chief Executive Officer ("CEO") of

5  Fortuno, GCA, Infostar and TMP; and was a signatory on the bank

6  account maintained by GCA.

7  B.    THE SCHEME TO DEFRAUD

8    3.    Beginning on a date unknown to the Grand Jury, but no later

9  than in or about April 2007, and continuing until at least in or

10  about November 2009, in San Bernardino and Los Angeles Counties,

11  within the Central District of California, and elsewhere, defendant

12  YOTTY, together with others known and unknown to the Grand Jury,

13  knowingly and with the intent to defraud, devised, participated in,

14  and executed a scheme to defraud victims as to material matters, and

15  to obtain money and property from such victims by means of material

16  false and fraudulent pretenses, representations, and promises, and

17  the concealment of material facts.

18    4.    The scheme to defraud operated, in substance, in the

19  following manner and by the following means:

20        a.    Defendant YOTTY and other co-schemers would falsely

21  and fraudulently induce victims in the Central District of California

22  and elsewhere to send money to the Yotty entities through the

23  following fraudulent devices, among others:

24            i.    Defendant YOTTY, other co-schemers, and other

25  persons relying on information provided by defendant YOTTY and the

26  other co-schemers, offered victims investments in convertible

27  debentures ("CDs"), promissory notes, and other financial instruments

28

1    that defendant YOTTY falsely and fraudulently represented and

2    promised were safe and secure and would pay substantial interest; and

3                ii.  Defendant YOTTY, other co-schemers, and other

4    persons relying on information provided by defendant YOTTY and the

5    other co-schemers, offered victims investments in a real estate

6    venture that defendant YOTTY falsely and fraudulently represented and

7    promised would result in substantial profits for the victims through

8    the resale of properties that defendant YOTTY falsely claimed Fortuno

9    had sold to the investors for substantially less than the properties'

10   fair market value.

11              b.   In furtherance of the fraudulent scheme, defendant

12   YOTTY made and caused to be made the following false and fraudulent

13   representations and promises to the victims, among others.

14              i    That the net business income of each company

15   issuing a CD offered to the victims would be sufficient for the

16   issuing company to pay the annual interest rate promised by the CD

17   over the full term of the CD;

18              ii.  That the net business income of each company

19   issuing a promissory note offered to the victims would be sufficient

20   for the issuing company to pay the annual interest rate promised by

21   the promissory note over the full term of the promissory note;

22              iii. That the victim's capital investment would be

23   returned intact to the victim at the end of the designated term of

24   the CD, promissory note, or other financial instrument in which the

25   victim had invested;

26              iv.  That Fortuno was passing on to the victims the

27   savings that Fortuno had realized when it had purchased the

28   properties Fortuno was selling to the victims;

v.   That the properties Fortuno sold to the victims were in livable condition and were ready to be rented or resold;

vi.   That Fortuno would manage the properties purchased by the victims until they were resold, including paying for upkeep, improvements, and taxes associated with the properties;

vii. That properties sold to victims through the Fortuno program typically resold within 30 to 60 days; and

viii. That participation in the Fortuno program would result in big profits and substantial returns on investment for the victims.

c.   In truth and in fact, as defendant YOTTY then well knew, the representations and promises described in paragraph 4(b) were materially false in the following respects, among others:

i.   The net business income of each company issuing a CD offered to the victims would not be sufficient for the issuing company to pay the annual interest rate promised by the CD over the full term of the CD;

ii.   The net business income of each company issuing a promissory note offered to the victims would not be sufficient for the issuing company to pay the annual interest rate promised by the promissory note over the full term of the promissory note;

iii. The victim's capital investment would not be returned intact to the victim at the end of the designated term of the CD, promissory note, or other financial instrument in which the victim had invested;

iv.   Fortuno was not passing on to the victims any savings that Fortuno had realized when it had purchased the properties Fortuno was selling to the victims;

4

1    v.   The properties Fortuno sold to the victims were
2    not in livable condition and were not ready to be rented or resold;

3    vi.   Fortuno did not always pay for all of the
4    necessary upkeep, improvements, and taxes associated with the
5    properties purchased by the victims; and

6    vii. The properties sold to victims through the
7    Fortuno program did not typically resell within 30 to 60 days; and

8    viii. Participation in the Fortuno program did not
9    result in big profits and substantial returns on investment for the
10   victims.

11   d.   It was further part of the fraudulent scheme that
12   defendant YOTTY concealed and caused others to conceal the following
13   material facts, among others:

14   i.   That the Pennsylvania Securities Commission and
15   the Oklahoma Department of Securities had each entered a Cease and
16   Desist Order against defendant YOTTY and a company he controlled for
17   selling unregistered securities;

18   ii.   That defendant YOTTY would use the victim-
19   investors' funds to make "interest" payments and returns of capital
20   to other victim-investors;

21   iii. That the Yotty entities did not have enough net
22   income from their business activities to pay their expenses and
23   therefore could not make "interest" payments and returns of capital
24   without using the investors' funds to do so;

25   iv.   That Fortuno applied a substantial mark-up to the
26   houses that it was selling to investors, and sometimes sold them for
27   three times the amount that Fortuno had paid for the house; and

28

v.    That the salesmen promoting the investments in the Yotty entities were receiving substantial commissions funded by the victims' investments.

e.    Further, to execute the scheme to defraud, defendant YOTTY would make and cause to be made materially false and misleading representations and promises to the victims for the purpose of lulling the victims into believing that the money they had invested in the Yotty entities was safe and that any delays in the promised interest payments, return of capital, and resale of the properties purchased through the Fortuno program were only temporary.

C.    EXECUTIONS OF THE FRAUDULENT SCHEME

5.    On or about the dates set forth below, within the Central District of California and elsewhere, defendant YOTTY, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| ONE | May 8, 2009 | $63,800 wire transfer from Bank of America ("BofA") account no. X2352 held by victim S.H. in Woodland Hills, CA, to JPMorgan Chase Bank account no. X7765 in Salt Lake City, UT |
| TWO | May 11, 2009 | $65,990 wire transfer from Bank of America account no. X1035 held by victims G.L. and S.L. in Upland, CA, to JPMorgan Chase Bank account no. X7765 in Salt Lake City, UT |
| THREE | June 9, 2009 | $31,900 wire transfer from BofA account no. X2352 held by victim S.H. in Woodland Hills, CA, to JPMorgan Chase Bank account no. X7765 in Salt Lake City, UT |

COUNTS FOUR THROUGH SEVEN

[18 U.S.C. §§ 1341, 2(a)]

6.   The Grand Jury repeats and realleges paragraphs 1, 2, and 4 of this Indictment as if fully set forth herein.

A.   SCHEME TO DEFRAUD

7.   Beginning on a date unknown to the Grand Jury but at least as early as April 2007, and continuing until at least in or about November 2009, in San Bernardino and Los Angeles Counties, within the Central District of California, and elsewhere, defendant YOTTY, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  The scheme to defraud is described in greater detail in paragraph 4, above.

B.   EXECUTIONS OF THE FRAUDULENT SCHEME

8.   On or about the following dates, within the Central District of California and elsewhere, defendant YOTTY, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service according to the directions thereon:

///

///

///

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| FOUR | May 12, 2009 | Letter from Fortuno to victim S.H. in Woodland Hills, CA, confirming receipt of $61,800 and purchase of two properties, and assigning 437 Matthews Street and 899 Lovers Lane, Akron, OH, to S.H. as her investment properties |
| FIVE | June 11, 2009 | Letter from Fortuno to victim S.H. in Woodland Hills, CA, confirming receipt of $31,900 and purchase of one property, and assigning 2213 Sloan St., Flint, MI, to S.H. as her investment property |
| SIX | July 17, 2009 | Letter from GCA to victim A.J. in Fontana, CA, thanking victim A.J. for his additional $12,500 investment and $50,000 12% interest one-year term Promissory Note |

///

///

///

///

///

///

///

///

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| SEVEN | August 21, 2009 | Letter from GCA to victim J.M. thanking victim J.M. in Upland, California, for her recent rollover investment and $27,250 12% interest one-year term Corrected Promissory Note |

A TRUE BILL

/S/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

RANEE A. KATZENSTEIN
Assistant United States Attorney
Deputy Chief, Major Frauds Section